UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JULIO ALFREDO ROSARIO                          :
GONZALEZ,                                      :
         Petitioner,                         :    **MEMORANDUM OPINION**
                                       :    **AND ORDER**
v.                                             :
                                       :    23 CR 186 (VB)
UNITED STATES OF AMERICA,                       :    23 CV 11327 (VB)
          Respondent.                        :
-----------------------------------------------------x

Briccetti, J.:

      Petitioner Julio Alfredo Rosario Gonzalez, proceeding pro se, moves pursuant to 28

U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Liberally construed, Rosario

Gonzalez claims his counsel was ineffective at sentencing because counsel (i) failed to present

the burden of Rosario Gonzalez's absence on his family as a mitigating factor, (ii) allowed the

government to assert that Rosario Gonzalez initially fled when he was approached by law

enforcement, and (iii) failed to argue Rosario Gonzalez's participation in a safety-valve proffer

warranted a lower sentence.

      For the following reasons, the motion is DENIED and the petition is DISMISSED.

**BACKGROUND**

      In late April 2022, a confidential informant spoke with Rosario Gonzalez about

purchasing fentanyl.  On April 29, 2022, the informant and Rosario Gonzalez agreed to meet that

evening in the parking lot of the Hyatt House White Plains, in West Harrison, New York.  The

pair agreed that Rosario Gonzalez would sell the informant two kilograms of fentanyl for

$90,000.  Around midnight on April 30, Rosario Gonzalez drove to the agreed-upon meeting

place and got into the informant's car.  Several of Rosario Gonzalez's co-conspirators arrived on

the scene to conduct surveillance and ensure the informant did not intend to rob them.  While

Rosario Gonzalez was sitting in the car with the informant, one of the co-conspirators showed the informant two kilogram bricks of fentanyl. Law enforcement then moved in to make an arrest, but Rosario Gonzalez fled on foot into the nearby woods, where he was apprehended a few minutes later.[1]

On April 7, 2023, after engaging in a successful "safety-valve" proffer, Rosario Gonzalez waived indictment and pleaded guilty pursuant to a plea agreement to one count of participating in a conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). In their plea agreement, the parties agreed that Rosario Gonzalez faced a potential prison sentence of between zero and 20 years' imprisonment. The parties further agreed that the final offense level under the U.S. Sentencing Guidelines was Level 27, Rosario Gonzalez had zero criminal history points, and the advisory sentencing range was 70–87 months' imprisonment. The Guidelines calculation reflected, among other things, a downward adjustment based on Rosario Gonzalez's successful safety-valve proffer.[2]

At the guilty plea proceeding, Magistrate Judge Davison conducted a thorough plea allocution in accordance with Rule 11 of the Federal Rules of Criminal Procedure. Judge Davison confirmed that Rosario Gonzalez signed the plea agreement freely and voluntarily after reviewing it in its entirety with his attorney and with the assistance of a Spanish interpreter; the maximum possible prison term was 20 years, with the potential for additional jail time if Rosario Gonzalez violated the conditions of supervised release; Rosario Gonzalez would likely be subject

---

[1]     These facts are taken from the unobjected-to offense conduct section of the presentence investigation report (Doc. #102 ("PSR")), which the Court adopted as its findings of fact at sentencing ("Sentencing Tr."). Citations to "Doc. #__" herein are references to documents filed on the ECF docket for case no. 23-cr-186 (VB).

[2]     Rosario Gonzalez's contention that 60 months "was the maximum under the plea deal" (Doc. #108 at 1) is false. The stipulated Guidelines range was 70–87 months' imprisonment.

to deportation as a result of his guilty plea; the agreed-upon Guidelines range was 70–87 months' imprisonment; and the plea agreement included an appeal waiver by which Rosario Gonzalez relinquished his right to challenge any sentence of imprisonment less than 87 months.  The government also made a proffer of the evidence it would have adduced at trial, including recordings of calls in which Rosario Gonzalez discussed the drug transaction, testimony of the confidential informant involved in the transaction, and testimony of the laboratory technicians who tested the contents of the drugs Rosario Gonzalez attempted to sell.  Rosario Gonzalez then entered his guilty plea, and Judge Davison recommended that this Court accept the plea as knowing and voluntary and supported by an independent factual basis for each element of the crime charged.  The Court later accepted that recommendation and Rosario Gonzalez's guilty plea.

Prior to sentencing, Rosario Gonzalez's attorney, Evans D. Prieston, Esq., submitted a detailed sentencing memorandum, as well as more than twenty letters of support from Rosario Gonzalez's family and friends.  In the memorandum, Mr. Prieston strongly advocated for leniency, and specifically for a downward variance to 24 months' imprisonment.  In doing so, Mr. Prieston cited several mitigating factors, including Rosario Gonzalez's difficult upbringing; his role as caretaker to his eleven-year-old child and mother in the Dominican Republic; his lack of a criminal record; his history of legitimate employment; his likely deportation; and the outpouring of support from his family, friends, and neighbors.  Mr. Prieston also noted that Rosario Gonzalez was "fully cooperative with the Government and took full responsibility for his actions."  (Doc. #101 at 2–4).  The Probation Office recommended 60 months' imprisonment.

Rosario Gonzalez was sentenced on July 20, 2023.  Consistent with the parties' guideline stipulation, the Court found that the applicable advisory sentencing range was 70–87 months'

imprisonment, based on a final offense level of 27, at Criminal History Category I.  At the sentencing hearing, Mr. Prieston explained that "the reason I ask for . . . a substantially less sentence than the Guidelines recommend, and even Probation's recommendation, is he's going to be leaving this country when this is over.  He has a son there that he's very proud of.  And he came up in multiple meetings."  (Sentencing Tr. at 12).  Mr. Prieston also stated that Rosario Gonzalez "has been a good person in his family."  (Id.).  Rosario Gonzalez spoke on his own behalf at sentencing, expressing his remorse and gratitude for the support of his family and Mr. Prieston.  (Id. at 13–14).  After considering all of the factors set forth in 18 U.S.C. § 3553(a), the Court imposed a term of imprisonment of 60 months, which constituted a substantial downward variance from the applicable Guidelines range of 70–87 months.  The Court focused on the seriousness of the offense and the dangers of fentanyl in particular, explaining that "[t]he offense is simply way too serious to warrant any further downward variance."  (Sentencing Tr. at 17).  The Court also considered the following mitigating factors which, in combination, warranted the downward variance:  Rosario Gonzalez's "attempt[] to provide substantial assistance to law enforcement after his arrest," his successful safety-valve proffer, "the strong support of his family and friends," his "history of legitimate employment," and the fact that "he faces deportation after completing his jail sentence."  (Id. at 16–17).

After the Sentencing Guidelines were amended in 2023, Rosario Gonzalez filed a motion for retroactive application of Amendment 821 based on his lack of criminal history points, to which the government consented.  The Court granted the motion, and reduced Rosario Gonzalez's term of imprisonment to 57 months, which was at the low end of the amended sentencing range.

**DISCUSSION**

To prevail under the familiar standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), Rosario Gonzalez must (i) demonstrate that his attorney's performance fell below an "objective standard of reasonableness," meaning it amounted to incompetence under "prevailing professional norms," <u>id</u>. at 688, 690, and (ii) affirmatively prove prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," <u>id</u>. at 694, not merely that an error "had some conceivable effect on the outcome," <u>id</u>. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. In the sentencing context, "the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different." <u>NcNaught v. United States</u>, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009).

Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland v. Washington</u>, 466 U.S. at 689. Indeed, this Court will not second-guess strategic or tactical decisions made by counsel. This is because there are many ways to provide effective assistance in a given case. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." <u>Harrington v. Richter</u>, 562 U.S. 86, 106 (2011) (quoting <u>Strickland v. Washington</u>, 466 U.S. at 689).

Rosario Gonzalez's ineffectiveness of counsel arguments fail because (i) the record conclusively demonstrates Mr. Prieston's performance at sentencing did not fall below an

objective standard of reasonableness, and (ii) in any event, Rosario Gonzalez suffered no prejudice.

First, Rosario Gonzalez asserts Mr. Prieston was ineffective because he failed to present the burdens of Rosario Gonzalez's absence on his mother, fiancé, and son as a mitigating factor at the sentencing hearing.  But, in his sentencing memorandum, Mr. Prieston specifically mentioned Rosario Gonzalez's eleven-year-old son and mother and the support Rosario Gonzalez provides to them.  In addition, Rosario Gonzalez's fiancé submitted a sentencing letter detailing the impact his absence would have on her and her family.  The PSR also contained a detailed description of Rosario Gonzalez's family life and responsibilities.  Having reviewed the sentencing memorandum, the sentencing letters, and the PSR, the Court considered Rosario Gonzalez's family history and support in imposing the sentence, and, partially as a result of those specific circumstances, varied downwardly from the Guidelines range.  The fact that Mr. Prieston did not explicitly argue at sentencing that the burden on Rosario Gonzalez's family warranted a downward departure cannot be characterized as falling below an objective standard of reasonableness.  See Brown v. United States, 2019 WL 3311271, at *10 (S.D.N.Y. July 17, 2019) (finding no ineffective assistance of counsel when counsel's written submissions addressed the relevant arguments, but counsel did not orally address those arguments at the sentencing hearing).

Second, Rosario Gonzalez asserts Mr. Prieston was ineffective because he "allowed the AUSA an opportunity to offer information that was not disputed by counsel . . . that the defendant tried to initially flee when approached by law enforcement."  (Doc. #108 at 3–4).  Rosario Gonzalez misstates the record on this point.  The government's sentencing memorandum referenced Rosario Gonzalez fleeing into the woods only in the context of reciting the underlying

conduct, and it did not mention this fact at all in the discussion of the need for a substantial sentence. The government also did not reference this fact in its oral presentation at the sentencing hearing. (Sentencing Tr. at 9–10). Moreover, the Court referenced Rosario Gonzalez's flight only in its description of the offense conduct (id. at 15)—not when it explained its justifications for imposing the sentence (id. at 17–18). Mr. Prieston did not act unreasonably in deciding not to draw the Court's attention to this fact at the sentencing hearing, because, as a matter of strategy, Mr. Prieston could reasonably have decided that Rosario Gonzalez's flight could have potentially undermined the argument that Rosario Gonzalez had taken full responsibility for his offense. See Percan v. United States, 294 F. Supp. 2d 505, 514 (S.D.N.Y. 2003) ("It is not the role of the Court to second-guess counsel's strategic decisions.").

Third, Rosario Gonzalez asserts Mr. Prieston was ineffective because he failed to argue that Rosario Gonzalez's participation in a safety-valve proffer warranted a lower sentence. But the Court did consider Rosario Gonzalez's safety-valve proffer, explaining that "the safety-valve proffer is baked into that 70-to-87-month guideline range" because the range "includes the two-level downward adjustment based on a safety-valve proffer." (Sentencing Tr. at 16). Therefore, Rosario Gonzalez's third and final argument is meritless as well.

At bottom, nothing about Mr. Prieston's performance in connection with sentencing amounted to incompetence under prevailing professional norms.

Even if Mr. Prieston's representation fell below an objective standard of reasonableness—which it did not—Rosario Gonzalez cannot show he was prejudiced by Mr. Prieston's alleged failures. In addressing Mr. Prieston's recommendation that Rosario Gonzalez be sentenced to two years' imprisonment, the Court stated:

> The offense is simply way too serious to warrant any further downward variance. If I were to impose a two-year sentence or a three-year sentence or a four-year sentence,

that would offend one of the principal considerations under the statute, which is to promote respect for the law.  It would offend that because it would actually promote disrespect for the law.

(Sentencing Tr. at 17).  Thus, even if Mr. Prieston had presented the arguments Rosario Gonzalez outlines in his motion, the Court would not have downwardly varied any further given the nature and circumstances of the offense.  See United States v. Gali, 708 F. Supp. 3d 271, 280 (E.D.N.Y. 2023) (finding no prejudice when the Court imposed a sentence substantially below the Guidelines range and highlighted the "serious" nature of the offense).[3]

*     *     *

Under these circumstances, because the files and records of this case conclusively show Rosario Gonzalez is not entitled to relief under Section 2255, the Court need not grant a further hearing to determine the issues and make findings of fact and conclusions of law.  See 28 U.S.C. § 2255(b); Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009).

**CONCLUSION**

Petitioner Julio Alfredo Rosario Gonzalez's motion under 28 U.S.C. § 2255 is DENIED and the petition is DISMISSED.

As Rosario Gonzalez has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).

---

[3]      In his response to the government's opposition to the motion, Rosario Gonzalez appears to contend that he did not understand the plea agreement because it was not written in Spanish. (Doc. #130 at 1).  This assertion is rejected as plainly frivolous, because at the guilty plea proceeding, Rosario Gonzalez stated under oath that the entire plea agreement had been translated for him by a Spanish interpreter, that he read and reviewed the agreement with his attorney with the assistance of the interpreter before he signed it, and that he understood the entire agreement.  (Doc. #75 at 13).  Also, Rosario Gonzalez's request that the Court obtain his cell phone in order to personally review the conversation between Rosario Gonzalez and the informant during which Rosario Gonzalez agreed to participate in the drug trafficking conspiracy (Doc. #130 at 2) is denied as plainly frivolous because Rosario Gonzalez's guilt is not the least bit in doubt.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk is instructed to close case no. 23-cv-11327 (VB).

The Clerk is further instructed to mail a copy of this memorandum opinion and order to petitioner Rosario Gonzalez at the address on the docket in case no. 23-cv-11327 (VB).

Dated:  May 12, 2025
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

9